IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) Old McDoobie's Logistics, LLC, and | ) | |
| (2) Todd Curtis, | ) | |
| Plaintiffs, | ) | Case No. |
| vs. | ) | |
| (3) Seahorse Express, Inc., | ) | |
| (4) Danny Nasser, and | ) | |
| (5) Manny Rodriguez, | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs Old McDoobie's Logistics, LLC ("McDoobie's") and Todd Curtis ("Curtis"), for their causes of action against Defendants Seahorse Express, Inc. ("Seahorse"), Danny Nasser ("Nasser"), and Manny Rodriguez ("Rodriguez"), allege and state as follows:

### NATURE OF THE ACTION

1. This is an action at law for libel per se under 12 O.S. § 1441 arising from Defendants' malicious, retaliatory publication of a false Carrier411 FreightGuard report on October 28, 2026—posted fifty-seven minutes after Defendant Nasser threatened Plaintiffs in writing for stating Plaintiffs would file a claim against Seahorse's federal broker surety bond. Plaintiffs seek tort damages solely for Defendants' independent,

post-delivery defamatory publication and do not seek adjudication or recovery of any contractual freight or accessorial balance in this action.

## Parties

2. Plaintiff Old McDoobie's Logistics, LLC (USDOT #4434426 / MC #1745262) is a federally licensed motor carrier organized as an Oklahoma limited liability company with its FMCSA-registered physical address in Shawnee, Pottawatomie County, Oklahoma, and its principal executive and dispatch office in Norman, Cleveland County, Oklahoma. Its sole member is Todd Curtis, an Oklahoma citizen. No member is a citizen of Texas.

3. Plaintiff Todd Curtis is a natural person domiciled in Cleveland County, Oklahoma, a citizen of Oklahoma, and the sole member of Old McDoobie's Logistics, LLC. Pursuant to *Siloam Springs Hotel, L.L.C. v. Century Surety Co.*, 781 F.3d 1233, 1237–38 (10th Cir. 2015), Old McDoobie's Logistics, LLC is a citizen of Oklahoma.

4. Defendant Seahorse Express, Inc. (USDOT #2788591 / MC #929597) is a corporation organized under Texas law with its principal place of business at 110 Vintage Park Blvd., Suite #245, Houston, Harris County, Texas 77070, and is a citizen of Texas. **Ex. 5 at 2.**

5. Defendant Danny Nasser is a natural person domiciled in and a citizen of Texas, and serves as Managing Director and principal of Seahorse Express, Inc.

6. Defendant Manny Rodriguez is a natural person domiciled in and a citizen of Texas, and serves as Specialized Cargo Division Manager of Seahorse Express, Inc.

## JURISDICTION AND VENUE

7. This Court has original diversity jurisdiction under 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between Plaintiffs (citizens of Oklahoma) and Defendants (citizens of Texas), and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. The amount in controversy exceeds $75,000.00 based solely on Plaintiffs' tort damages resulting from the October 28, 2026 Carrier411 publication, including:

a. direct reputational harm, loss of business goodwill, and lost commercial freight revenue inflicted on McDoobie's, an established motor carrier generating over $1,000,000.00 in annual gross revenue that has already had two existing customers cite Defendants' publication

as a barrier to continued business and four prospective customers refuse to tender freight to McDoobie's outright because of the report;

b. personal reputational injury, humiliation, mental anguish, and emotional distress suffered by Curtis individually; and

c. Category II punitive damages pursuant to 23 O.S. § 9.1(C).

9. This Court has specific personal jurisdiction over each Defendant under 12 O.S. § 2004(F) and *Calder v. Jones*, 465 U.S. 783 (1984), because Defendants: a. purposefully communicated with Plaintiffs in Oklahoma throughout the underlying transaction via emails directed to office@oldmcdoobies.com, which displayed Plaintiffs' Shawnee and Norman, Oklahoma addresses in every signature block;

b. authored and published a nationwide Carrier411 FreightGuard alert that expressly targeted and identified "OLD MCDOOBIE'S LOGISTICS LLC, SHAWNEE, OK 74804" and "TODD CURTIS" on the face of the publication (**Ex. 5**);

c. knew and intended that interstate freight brokers nationwide utilizing Carrier411, Highway, and RMIS would view the report and refuse to tender freight loads to Plaintiffs at their Oklahoma headquarters; and

d. purposefully aimed their retaliatory tortious conduct at Oklahoma, knowing the focal point and brunt of the reputational and commercial injury would be suffered in the Western District of Oklahoma.

10. Venue is proper in the Western District of Oklahoma under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' defamation claim and the direct commercial and reputational injuries targeted by Defendants occurred in Cleveland County and Pottawatomie County, Oklahoma. Neither Load Confirmation #12979 nor Load Confirmation #12979-1 contains any forum-selection or arbitration clause, and Plaintiffs' tort claim arises from an independent, post-delivery defamatory publication aimed at Oklahoma by non-signatory individuals (Nasser and Rodriguez) against a non-signatory individual (Curtis) and motor carrier.

## FACTUAL ALLEGATIONS

### PLAINTIFFS' INDUSTRY REPUTATION

11. Prior to October 28, 2026, McDoobie's and Curtis maintained a good safety, ethical, and operational reputation in the specialized heavy-haul and driveaway freight industry, generating over $1,000,000.00 in annual gross revenue with no derogatory Carrier411 FreightGuard reports.

### CHRONOLOGY OF THE CRANE TRANSPORT ESTABLISHING THE FALSITY OF DEFENDANTS' STATEMENTS

12. On July 10, 2026, Seahorse (through Rodriguez) issued Load Confirmation #12979 engaging McDoobie's to transport a 30-year-old 1996 Liebherr LTM 1160/2 all-terrain crane (SN: 0028233) from

Owensboro, Kentucky, to the Port of Baltimore, Maryland, representing the crane as weighing 134,000 lbs. **Ex. 1.**

13. When Curtis arrived in Owensboro, Kentucky, on July 14, 2026, at 7:54 AM, the crane still had its main boom attached without a boom dolly and could not legally be moved over the road as dispatched. **Ex. 8 at 2.** Seahorse arranged for a third party to remove and transport the boom, and re-dispatched the load under Load Confirmation #12979-1 as a 90,000-lb. self-propelled "Drive Away" unit. **Ex. 2.** McDoobie's had no involvement in the timing, removal, or transport of the boom.

14. Curtis re-mobilized to Evansville, Indiana, and Owensboro, Kentucky, on September 13-14, 2026. When Curtis scaled the crane in Owensboro on September 14, 2026, the shipper's weight and axle specifications were inaccurate again, requiring overweight permit re-orders across Kentucky, West Virginia, and Maryland. **Ex. 8 at 3.**

15. On Monday, September 14, 2026, at 7:47 AM, prior to departing Kentucky, Curtis emailed Rodriguez, Daniel Rhodes, and Mae Morales requesting the required export documentation: "Please send updated dock receipt." **Ex. 3 at 9.** Seahorse failed to ensure the export paperwork was cleared for port entry, culminating in the shipping line turning the crane away on September 21, 2026, because Dock Receipt SA-01296855 lacked the mandatory U.S. Customs AES electronic export stamp. **Ex. 7**

**at 13.** U.S. Customs and Border Protection did not validate and stamp the Dock Receipt "EXPORT APPROVED" until September 22, 2026, after Curtis – at Seahorse's instruction – took an Uber to the U.S. Customs office and back to the crane to obtain the physical ("wet" or "hard") customs stamp. **Ex. 7 at 14; Ex. 8 at 6.**

16. During transit on September 14-15, 2026, the 30-year-old crane suffered hydraulic fluid leaks due to the prior owner's neglect of maintenance and repairs and the failure of Seahorse and the new owner to properly inspect the crane prior to transport. After documenting the leaks by photograph in Owensboro on September 14 at 11:06 AM and obtaining an initial roadside leak repair in Beaver Dam, Kentucky ($535.34), Curtis emailed Rhodes, Rodriguez, Morales, and Nasser on Tuesday, September 15, 2026, at 9:57 AM reporting an upper-machine hydraulic leak and advising that the crane had to be repaired and washed before the port would accept it for export. **Ex. 3 at 6.**

17. Following the first roadside hydraulic repair in Beaver Dam, Kentucky, on the morning of Tuesday, September 15 McDoobie's conducted a pre-trip inspection and noticed leaks at the upper crane compartment, notified Seahorse, and – at Defendant Rodriguez's request – located a mobile road service to perform a second hydraulic repair in the parking lot of the Holiday Inn in Catonsville, Maryland, and on Tuesday,

September 15, 2026, at 4:23 PM, Rodriguez replied to Curtis (copying Rhodes, Morales, and Nasser), personally dispatching a mobile wash company to wash the crane after the second hydraulic repair at the Holiday Inn:

> Hello Todd, China Mobile truck 301-609-2616 will meet you at the Holiday Inn you'll be located in at 5701 Baltimore National Pike, Catonsville, MD 21228, around 9 am. He has your number, and now you have his; please call him to get acquainted, thanks.

**Ex. 3 at 5.** This was necessary because the crane had become covered in hydraulic fluid from the two leaks. When Curtis arrived at the Catonsville Holiday Inn on Tuesday night, September 15, 2026 (8:56 PM), Curtis heard an audible air leak coming from the passenger-side second-axle tire during the post-day driving inspection and tried to get someone to come out that night, but no service would dispatch because no one had an established account to obtain repairs, and the tire vendor wanted in-office prepayment and would not accept payment by phone. On Wednesday morning, September 16, 2026, the Seahorse-approved mobile road service came out to the Holiday Inn parking lot, fixed the second hydraulic leak ($550.50), and was able to dispatch another tire service ($341.50) to pull the tire off the rim. The tire technician declared that the tire could not be repaired due to broken internal belts ("Broke Belts") and that it did not have a replacement tire in stock, and further

noticed a second tire had outer sidewall damage, and could not be repaired and needed to be replaced. Although the replacement tire vendor (McCarthy Tire) projected that the tires would not be done until Friday, September 18, 2026, the vendor obtained the new tires sooner and replaced the tires on Thursday, September 17, 2026, unbeknownst to McDoobie's. **Ex. 4 at 2, 5-18; Ex. 8 at 4.**

**18.** Contemporaneous records, including mobile arrival timestamps, hotel parking lot staging photographs, macro photographs of a large metal bolt embedded in the tread, technician markup diagnosing internal belt failure ("Broke Belts"), and McCarthy Tire replacement invoices (**Ex. 4 at 2-4, 9-12, 17-18**) directly refute Seahorse's fabricated claim in its Freight Guard report (**Ex. 5**) that Curtis recklessly damaged tires by driving through a construction site.

There was no construction site at the hotel, and nothing was blocked off by the hotel to differentiate from the normal operation of the hotel parking lot as distinguishable from an area where certain parts of the hotel were being renovated.

**19.** On Wednesday, September 16, 2026, at 4:44 PM, prior to flying home with Rodriguez's authorization, Curtis emailed interim load invoicing (**Ex. 3 at 4**), followed by Rodriguez's September 18 (9:39 AM) email confirming tire installation and asking when Curtis was returning from

Oklahoma (**Ex. 3 at 3**). McDoobie's Invoice #2026-104-C transparently billed the pre-arranged five-day Catonsville hotel storage ("9-16-26 to 9-21-26 Truck Storage - Catonsville, MD") (**Ex. 8 at 4**), conclusively disproving Seahorse's false allegation in its Freight Guard report (**Ex. 5 at 2**) that Curtis abandoned the crane without notice.

**20.** Because the replacement tires were scheduled for installation on Friday, September 18, 2026, and the Port of Baltimore closes receiving gates at 4:00 PM on weekdays and does not accept weekend deliveries, Rodriguez approved leaving the immobilized 90,160-lb. crane parked at the Catonsville Holiday Inn through Monday, September 21, 2026, and released Curtis to fly home to Oklahoma (where Curtis attended a pre-scheduled family function on Saturday, September 19) rather than incurring $500.00 per day in weekend driver layover charges.

**21.** After Curtis was already en route to Oklahoma, the tire vendor completed the tire replacement a day early, on Thursday, September 17, 2026. Confirming in writing that Seahorse knew Curtis was in Oklahoma with Seahorse's full knowledge and approval, Defendant Rodriguez emailed Curtis (copying Rhodes, Morales, and Nasser) on Friday, September 18, 2026, at 9:39 AM: "Hello Todd, The tires are replaced; please advise when you're going back to MD to pick it up. Thanks." **Ex. 3 at 3.**

22. On Monday, September 21, 2026, Curtis flew back to Baltimore as agreed, prepared the crane, and arrived at Dundalk Marine Terminal at 12:08 PM, where he was issued Gate Security Pass #GA634742. **Ex. 7 at 2-3, 8.** Terminal security admitted the crane into the port, but Atlantic Container Line through Ports America Chesapeake refused to accept the crane because the cargo documentation lacked a mandatory U.S. Customs AES electronic export stamp. **Ex. 7 at 13.**

23. Ordinarily, the off-site customs officers are able to inspect the export equipment *brought to their location* and issue the required “hard” or “wet” stamp; however, because of the over-dimensional character of the crane, an electronic stamp should have been issued *due to the fact that the oversized crane could not be driven to the off-site customs location.* Thus, Seahorse had been unable to obtain their electronic customs stamp in advance and required McDoobie’s to perform that function for them.

24. On September 21, at approximately 3:00 p.m. EDT, while maneuvering toward secondary overnight storage outside of the terminal, per Seahorse's instructions, the crane's hydro-pneumatic suspension failed to self-level or allow for manual adjustment due to age, neglect of maintenance and repairs by the previous owner, and the failure of Seahorse and the current owner to inspect the crane, requiring a $1,626.00 heavy wrecker extraction (**Ex. 7 at 9-10; Ex. 8 at 5**), an

expense whose receipt Seahorse specifically requested and audited. Ex. 9 at 8. On September 22, 2026, at Seahorse's instruction, because waiting for the electronic stamp was a more time-consuming process, and September 22 was the last day that ship was accepting cargo before departure, according to Seahorse, Curtis took an Uber to the U.S. Customs office and back to the crane to obtain the physical ("wet" or "hard") "EXPORT APPROVED" customs stamp on the dock receipt, after which final port delivery and staging at the designated delivery location were successfully completed and the crane was accepted. **Ex. 7 at 14.**

SEAHORSE'S AUDIT AND WRITTEN APPROVAL OF REPAIRS AND ACCESSORIALS

**25.** On September 23, 2026, McDoobie's submitted its final invoice package to Seahorse via electronic mail (**Ex. 3 at 2, 11**), transmitting progressive Invoices #2026-104 through #2026-104-E totaling $21,750.43 (**Ex. 8 at 2-6**) – charges that Seahorse subsequently audited on October 15, 2026 (**Ex. 9 at 8**) and ratified in part on October 27, 2026, by approving $6,728.47 in extra charges and additions and remitting $13,728.47 (**Ex. 2; Ex. 9 at 3-4**).

**26.** On October 15, 2026, Seahorse Accounts Payable Manager Evie Barbero requested and audited the vendor receipts for the Beaver Dam leak repair ($535.34), the Catonsville hydraulic repair ($550.50), and the

heavy wrecker extraction ($1,626.00) (**Ex. 9 at 8**), which McDoobie's provided, and which were concurrently documented on McDoobie's itemized settlement invoices. **Ex. 8 at 3-5**.

**27.** On Monday, October 26 at 4:33 PM, Defendant Nasser emailed Curtis (copying Barbero, Rodriguez, and Morales) stating: "I have approved all the charges we are responsible for, and a payment should be going out asap" (**Ex. 9 at 4**).

**28.** On Tuesday, October 27, 2026, Seahorse issued revised Load Confirmation #12979-1 approving $6,728.47 in "extra charges and additions" on top of the $7,000.00 base line haul, and remitted $13,728.47 to McDoobie's without expressly or specifically deducting or asserting any back-charge for tire damage. **Ex. 2.** On Wednesday, October 28, 2026, at 7:36 AM and 7:49 AM, Nasser and Curtis exchanged emails regarding the remaining $8,021.96 invoice balance that Seahorse had not paid. **Ex. 9 at 2-3.**

<u>THE 57-MINUTE RETALIATION SEQUENCE OF OCTOBER 28, 2026</u>

**29.** At 10:19 AM CDT on October 28, 2026, Curtis sent an email to Nasser (copying Barbero, Rodriguez, Morales, and Rhodes) stating:

> Danny, With your last response, you have pushed our hand into the next direction. This email will serve as our final demand for $8,021.96. If payment is not in our account by 1700 hours central time today, we will file on your bond,

> along with filing in court for the balance to include late fees and attorney cost.

**Ex. 9 at 2.**

30. At 11:41 AM MDT / 12:41 PM CDT on October 28, 2026, Defendant Nasser replied in writing to Curtis: "Go right ahead; we will do exactly the same." **Ex. 9 at 1.**

**31.** Approximately fifty-seven minutes later, at 12:38:21 PM MDT / 1:38:21 PM CDT on October 28, 2026, Defendant Rodriguez executed Nasser's threat by publishing a false and defamatory Carrier411 FreightGuard report ("Defamatory Report," **Ex. 5**) against Plaintiffs, checking six derogatory classifications—including "FRAUDULENT ACTIVITY," "NO SHOW AND NO CALL," and "UNETHICAL OR DECEPTIVE BUSINESS PRACTICES"—and stating verbatim:

> TODD CURTIS WAS HIRED TO DRIVE A CRANE FROM KY TO MD. REPEATED PICKUP DELAYS CAUSED STORAGE FEES. DAMAGED 2 TIRES DRIVING THROUGH A CONSTRUCTION SITE, COSTING $5,300, THEN FLEW OUT TO ANOTHER JOB WITHOUT NOTICE, ABANDONING THE CRANE AT A HOTEL FOR 5 DAYS. HE BILLED AIRFARE, UBER, LAYOVERS, AND LODGING. UPON RETURN, HE GOT THE CRANE STUCK IN A DENT/SINKHOLE, REQUIRING A WRECKER AND BILLING US FOR IT DESPITE UNACCEPTABLE SERVICE, DELAYS, AND DAMAGES. WE PAID DOUBLE THE AGREED RATE. CARRIER IS DNU.

***Id.* at 2.**

<u>OBJECTIVE FALSITY AND ACTUAL MALICE</u>

32. Regardless of any billing disagreement over the unpaid invoice balance, the factual accusations published by Defendants in the Defamatory Report (**Ex. 5**) were objectively false when made, and Defendants Nasser, Rodriguez, and Seahorse knew they were false from their own contemporaneous emails:

a. **False “Abandoning the Crane at a Hotel for 5 Days Without Notice” and “Flew Out to Another Job” Statements:** Curtis did not fly out to another job or abandon the crane without notice. Rodriguez authorized leaving the crane at the Catonsville Holiday Inn over the weekend while awaiting replacement tires and port reopening, received Curtis's September 16 (4:44 PM) interim invoicing email prior to departure (**Ex. 3 at 4**) and Invoice #2026-104-C billing the five-day hotel storage (**Ex. 8 at 4**), and emailed Curtis on September 18 (9:39 AM) stating, "The tires are replaced; please advise when you're going back to MD to pick it up. Thanks" (**Ex. 3 at 3**).

b. **False “No Show and No Call” and “Repeated Pickup Delays” Statements:** Plaintiffs never failed to show or call.

Curtis mobilized twice to Owensboro, Kentucky, communicated daily with Seahorse (**Ex. 3**), and all pickup and port-entry delays were caused by the crane's attached boom on July 14 (**Ex. 1; Ex. 8 at 2**), inaccurate shipper weights requiring permit re-orders on September 14 (**Ex. 8 at 3**), and Seahorse's failure to provide a U.S. Customs-approved Dock Receipt until September 22 (**Ex. 7 at 13-14**).

c. **False "Fraudulent Activity" and "Unethical or Deceptive Business Practices" Statements:** Plaintiffs committed no fraud or deception. Rodriguez requested that McDoobie's locate a mobile repair service and personally dispatched the mobile wash vendor on September 15 at 4:23 PM (**Ex. 3 at 5**), Barbero audited the underlying vendor receipts on October 15 (**Ex. 9 at 8**), and Nasser wrote on October 26 that he had "approved all the charges we are responsible for" (**Ex. 9 at 4**) and on October 27 Seahorse approved $6,728.47 in "extra charges and additions" and remitted $13,728.47. **Ex. 2; Ex. 9 at 3-4.** Seahorse did not specify which charges were being paid and which items were being arbitrarily withheld.

d. **False Construction-Site Tire Damage Statement:** Curtis did not damage the crane's tires driving through a construction site.

The damage to the 30-year-old crane's aged tires from unavoidable road hazards and internal belt deterioration was noticed by the tire technician in the Catonsville hotel parking lot after Curtis's post-trip inspection revealed an audible air leak coming from the tire (**Ex. 4 at 2-12**). Seahorse funded the replacement tires on September 16 (**Ex. 4 at 17-18**) and never expressed any specific carrier back-charge when issuing revised Load Confirmation #12979-1 on October 27 (**Ex. 2**).

<u>POST-PUBLICATION RATIFICATION, REFUSAL TO RETRACT, AND COMMERCIAL HARM</u>

33. On Thursday, October 29, 2026, at 5:44 PM, Plaintiffs' counsel transmitted a formal Cease-and-Desist and Retraction Demand to Nasser, Rodriguez, and Barbero via electronic mail (**Ex. 11 at 1**), setting forth the exact timestamps and emails refuting the Defamatory Report and demanding its deletion prior to the expiration of Carrier411's 72-hour modification window (**Ex. 10 at 1-2, 5**).

34. Seventeen minutes later, on October 29, 2026, at 6:01 PM, Defendant Nasser replied to Plaintiffs' counsel (copying Rodriguez and Barbero), expressly ratifying the Carrier411 report and refusing to retract it (**Ex. 11 at 1**):

> Greg / You are wasting your time, your client owes us $18000 Beside what he's claiming we owe him, we have reported him to 411 and he will never see another job from us again, I would suggest you to read our contract before you waste any of your time.

35. Carrier411 is subscribed to by thousands of interstate freight brokers and integrates with automated carrier-qualification platforms (including Highway and RMIS), where alerts for "FRAUDULENT ACTIVITY," "UNETHICAL OR DECEPTIVE BUSINESS PRACTICES," "NO SHOW AND NO CALL," and "DNU" (Do Not Use) cause freight brokers to disqualify the flagged motor carrier. **Ex. 5.**

36. Since Defendants published the Defamatory Report on October 28, 2026, two of McDoobie's existing customers have advised that the severity of the publication represents a barrier to continued business, and four prospective customers have refused to work with McDoobie's outright because of Defendants' publication.

## COUNT I: LIBEL PER SE (12 O.S. § 1441)

37. Plaintiffs incorporate Paragraphs 1 through 36 as if fully set forth herein.

38. Under 12 O.S. § 1441, a false and unprivileged publication by writing that exposes any person to public hatred, contempt, or ridicule, or that tends to injure him in his occupation, is libel.

39. The Defamatory Report published on Carrier411 on October 28, 2026 (**Ex. 5**) is *of and concerning* both Old McDoobie's Logistics, LLC and Todd Curtis individually, as it expressly identifies "OLD MCDOOBIE'S LOGISTICS LLC, SHAWNEE, OK 74804" and "TODD CURTIS" on its face.

40. Viewed within its four corners, the Defamatory Report – checking "FRAUDULENT ACTIVITY," "UNETHICAL OR DECEPTIVE BUSINESS PRACTICES," and "NO SHOW AND NO CALL," and accusing Curtis of "ABANDONING THE CRANE AT A HOTEL FOR 5 DAYS" without notice – directly impugns Plaintiffs' honesty, integrity, and competence in their trade and profession and constitutes libel per se as a matter of law. In the alternative, under Fed. R. Civ. P. 8(d)(2), to the extent any portion of the Defamatory Report is not actionable *per se*, it directly caused special economic damages in the form of lost freight revenue and rejected load tenders from existing and prospective customers.

41. Defendant Rodriguez is personally and jointly liable as the individual author who logged into Carrier411 and published the Defamatory Report.

42. Defendant Nasser is personally and jointly liable as the corporate principal who issued the retaliatory threat at 11:41 AM MDT (12:41 PM CDT) on October 28 ("Go right ahead; we will do exactly the same"), directed and authorized Rodriguez's publication 57 minutes later, and ratified and refused to delete the report in writing on October 29 at 6:01 PM ("we have reported him to 411 and he will never see another job from us again").

43. Defendant Seahorse Express, Inc. is liable directly as the Carrier411 subscriber and vicariously under *respondeat superior* for the tortious acts committed by its managerial employees, Nasser and Rodriguez, within the course and scope of their employment.

44. Defendants published the Defamatory Report without privilege, with actual knowledge of its falsity or reckless disregard for the truth, and with common-law malice and ill will solely to retaliate against Plaintiffs and coerce them into abandoning their statutory bond rights. Any purported conditional or common-interest industry privilege is inapplicable and forfeited as a matter of law because Defendants

published the Defamatory Report with actual malice—knowing the statements were false from their own contemporaneous written records—and purely as an improper retaliatory weapon to coerce Plaintiffs into abandoning their statutory bond claim.

45. Pursuant to 23 O.S. § 9.1(C), Defendants' intentional and malicious conduct entitles Plaintiffs to Category II punitive damages in an amount up to the greatest of $500,000.00, twice the actual damages awarded, or the increased financial benefit derived by Defendants.

WHEREFORE, Plaintiffs Old McDoobie's Logistics, LLC and Todd Curtis demand judgment against Defendants Seahorse Express, Inc., Danny Nasser, and Manny Rodriguez, jointly and severally, as follows:

A. Presumed general damages and actual compensatory damages for injury to business reputation, loss of goodwill, lost commercial freight revenue, and Curtis's personal humiliation, mental anguish, and emotional distress, in an amount exceeding $75,000.00 to be determined by the jury;

B. Category II punitive damages pursuant to 23 O.S. § 9.1(C);

C. Prejudgment and post-judgment interest and costs of this action as authorized by law; and

D. Such other and further relief at law as the Court deems just and proper.

**Plaintiffs demand trial by jury as to all issues so triable.**

Dated: November 3, 2026

Respectfully submitted,

**MILSTEAD LAW PLLC**

s/ Greg Milstead_________
Greg Milstead, OBA #20782
124 E. Main St.
Norman, OK 73069
Tel: (405) 310-9681
Email: gmilsteadlaw@gmail.com
*Counsel for Plaintiffs Old McDoobie's Logistics, LLC and Todd Curtis*